# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISABETH MARIE PIRRO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No.  1:21-cv-00587-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 18, 19) |

**I.**

**INTRODUCTION**

Plaintiff Elisabeth Marie Pirro ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]   For the reasons set forth below, Plaintiff's motion for summary judgment shall be denied, and Defendant's cross-motion for summary judgment shall be

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 12, 13, 14.)

granted.

## II.

## BACKGROUND[2]

Plaintiff filed the instant application for Social Security benefits under Title II on May 1, 2018, alleging disability beginning May 15, 2015.  (See Admin. Rec. ("AR") 15, 210–19, ECF Nos. 15-1, 15-2.)  Plaintiff alleges she was unable to work due to post-traumatic stress disorder, anxiety, and major depressive disorder.  Plaintiff's claim was initially denied on January 3, 2019, and denied upon reconsideration on January 29, 2019.  (AR 120–25, 127–32.)  On July 16, 2020, Plaintiff, represented by non-attorneys Alexander Gorski and Andrew S. Youngman,[3] appeared via telephonic conference, for an administrative hearing before Administrative Law Judge Diane S. Davis (the "ALJ").  (AR 41–83.)  Vocational expert ("VE") Dennis Duffin also testified at the hearing.  On October 28, 2020, the ALJ issued a decision denying benefits.  (AR 12–40.)  On December 3, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–6.)

Plaintiff initiated this action in federal court on April 8, 2021, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on March 30, 2022.  (ECF No. 15.)  On May 5, 2022, Plaintiff filed a motion for summary judgment. (ECF No. 17.)  On June 21, 2022, Defendant filed a cross-motion for summary judgment and brief in opposition to Plaintiff's motion.  (ECF No. 18.)  Plaintiff filed a reply brief on June 27, 2022 (ECF No. 19), and the matter is deemed submitted on the pleadings.

## III.

## LEGAL STANDARD

### A.    The Disability Standard

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] Plaintiff is currently represented by attorney Stuart Barasch of the Law Offices of Stuart Barasch.  (See ECF No. 17.)

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

1    proof from step one through step four.

2         Before making the step four determination, the ALJ first must determine the claimant's

3    RFC.   20 C.F.R. § 416.920(e);   Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

4    1155971, at *2 (C.D. Cal. Mar. 2, 2018).   The RFC is "the most [one] can still do despite [her]

5    limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§

6    404.1545(a)(1); 416.945(a)(1).   The RFC must consider all of the claimant's impairments,

7    including those that are not severe.   20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security

8    Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is

9    not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See

10   20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as

11   responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's

12   physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049

13   (9th Cir. 2001).

14        At step five, the burden shifts to the Commissioner, who must then show that there are a

15   significant number of jobs in the national economy that the claimant can perform given her RFC,

16   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

17   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

18   ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury,

19   468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the

20   five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in

21   medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v.

22   Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

23        **B.    Standard of Review**

24        The parties appear to dispute the appropriate standard of review of the ALJ's decision.

25   (See ECF No. 19 at 1–2.)  This Court shall apply the appropriate standard of review, which is

26   

___

27   [6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20
     C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they

28   are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
     1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1    provided as follows.

2    Congress has provided that an individual may obtain judicial review of any final decision

3    of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4    determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5    the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6    Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7    the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8    405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9    evidence which, considering the record as a whole, a reasonable person might accept as adequate

10   to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11   (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12   Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13   the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14   not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

15   scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

16   CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17   citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19   454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20   falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

21   409 (2009).

22   Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23   simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

24   1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25   Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

26   review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

27   Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28   this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

5

1  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3  400 F.3d 676, 679 (9th Cir. 2005)).

4  ///

5  **IV.**

6  **THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

7        The ALJ conducted the five-step disability analysis and made the following findings of

8  fact and conclusions of law as of the date of the decision, March 5, 2021 (AR 18–35):

9        At step one, the ALJ determined Plaintiff meets the insured status requirements of the

10  Social Security Act through December 31, 2020, and Plaintiff has not engaged in substantial

11  gainful activity since May 15, 2015, the alleged onset date.  (AR 18 (citing 20 C.F.R. §§

12  404.1571 et seq.).)

13        At step two, the ALJ determined Plaintiff has the following severe impairments: post-

14  traumatic stress disorder ("PTSD") and a neurocognitive disorder.  (AR 18–19 (citing 20 C.F.R. §

15  404.1520(c)).)

16        At step three, the ALJ determined Plaintiff does not have an impairment or combination of

17  impairments that meets or medically equals the severity of one of the listed impairments in 20

18  C.F.R. Part 404, Subpart P, Appendix 1.  (AR 19–20 (citing 20 C.F.R. §§ 404.1520(d); 404.1525;

19  404.1526).)  The ALJ reached this determination based on her review of the paragraph B criteria

20  and the finding that Plaintiff's mental impairments do not result in one extreme limitation or two

21  marked limitations in a broad area of functioning.[7]  (Id.)  More specifically, the ALJ determined

22

23  _____

[7] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

1    Plaintiff has only "mild" limitations in the areas of "understanding, remembering or applying

2    information," and "adapting or managing oneself," and "moderate" limitations in the areas of

3    "interacting with others" and "concentrating, persisting, or maintaining pace." (AR 20.)

4         Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform a full

5    range of work at all exertional levels, but with the following non-exertional limitations:

6         **The claimant is capable of understanding, remembering, and
      carrying out more than simple but less than complex tasks that

7     can be learned and mastered in up to six months' time.  At such
      levels, she can maintain concentration, persistence or pace

8     within customary norms, can work in proximity to others,
      tolerating routine interaction with supervisors, coworkers, and

9     occasional contact with the general public.  The work involves
      no tandem job tasks, requiring cooperation with other workers

10    to complete the task.   She can make routine workplace
      decisions, plan and set goals, adapt to routine changes, travel,

11    and recognize and avoid ordinary workplace hazards.**

12   (AR 21–32 (citing 20 C.F.R. §§ 404.1529; 404.1520c; SSR 16-3p, <u>available at</u> 2017 WL 5180304

13   (Oct. 25, 2017)) (emphasis in original).)

14        At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR

15   32–33 (citing 20 C.F.R. § 404.1565).)

16        At step five, the ALJ noted Plaintiff was born on December 17, 1963, and was 51 years

17   old (which is defined as an individual closely approaching advanced age) on the alleged disability

18   onset date; Plaintiff has at least a high school education; and transferability of job skills is not

19   material to the determination of disability because using the Medical-Vocational Rules as a

20   framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has

21   transferrable job skills.  (AR 33 (citing 20 C.F.R. §§ 404.1563; 404.1564; SSR 82-41, <u>available at</u>

22   1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)   Considering

23   Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist

24   in significant numbers in the national economy that Plaintiff can perform, such as:

25   • <u>Harvest Worker for Field Crops</u> (Dictionary of Occupational Titles ("DOT") 404.687-

26        014), a heavy-exertional work position with a specific vocational preparation ("SVP")

27        level of 1, and approximately 262,000 jobs available in the national economy;

28   • <u>Landscape Laborer</u> (DOT 408.687-014), a light-exertional work position with an SVP

7

level of 2, and approximately 49,000 jobs available in the national economy;

- Hand Packager (DOT 920.587-018), a medium-exertional work position with an SVP level of 2, and approximately 40,000 jobs available in the national economy; and

- Dry Cleaner (DOT 681.685-018), a medium-exertional work position with an SVP level of 2, and approximately 68,000 jobs available in the national economy.

(AR 33–34 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on "years of experience in observing the positions being performed as well as completing job analysis."  (AR 34 (citing SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000)).)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from May 15, 2015 (the alleged date of onset) through October 28, 2020 (the date of decision).  (AR 35 (citing 20 C.F.R. § 404.1520(g)).)

**V.**

**DISCUSSION**

On appeal, Plaintiff asserts a single challenge to the ALJ's decision: that the ALJ failed to properly evaluate the medical opinions in accordance with 20 C.F.R. § 404.1520c.  (ECF No. 17 at 10.)

**A.    Legal Standard**

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).

Thus, the new regulations require an ALJ to apply the same factors to all medical sources when

considering medical opinions, and no longer mandate particularized procedures that the ALJ must

follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is

not required to articulate how [he] considered each medical opinion or prior administrative

medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675

(9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised

Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and

legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a

treating physician.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior

administrative medical findings, [the ALJ] will consider those medical opinions or prior

administrative medical findings from that medical source together using" the following factors:

(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

other factors that "tend to support or contradict a medical opinion or prior administrative medical

finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

evaluating the persuasiveness of medical opinions and prior administrative medical findings are

supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

factor, the regulation provides that the "more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).

Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

from other medical sources and nonmedical sources in the claim, the more persuasive the medical

opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other

remaining factors]," except when deciding among differing yet equally persuasive opinions or

findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

## B.    Medical Opinion Evidence[8]

### 1.    Dr. Mandip Grewal, Psy.D.

Dr. Grewal completed a consultative examination of Plaintiff on December 11, 2018. (AR 482–89.)  During the examination, Plaintiff reported her symptoms first started in 2013, when she was sexually assaulted coming home from work.  (AR 482.)  She reported she started experiencing symptoms of anxiety, headaches, and nightmares; and could no longer be in crowds, hold a conversation, or take public transportation.  Dr. Grewal noted this portion of the information Plaintiff reported "is inconsistent with information that was provided in her records reviewed for recent consultation that she had at the VA for services.  The claimant did report a history of sexual assault when she was in the service [from 1983 to 1987]; however, the claimant did not mention two recent assaults during her psychiatry consult that she had in October 2018." (AR 482–84.)

Though Plaintiff reported symptoms starting in 2013, Dr. Grewal noted Plaintiff did not start outpatient services at the VA—including taking psychotropic medications and PTSD classes—until August 2018, and expected to get an assigned therapist in December 2018.  (AR

---

[8] The Court notes that, under the applicable regulations for evaluating medical evidence, State agency medical and psychological consultants do not provide "medical opinions."  Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process.  20 C.F.R. § 404.1513a(a)(5) (listing examples of types of findings, such as the existence/severity of impairments or a claimant's RFC).  ALJs, however, must consider this evidence under the same rules that apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1); see also 20 C.F.R. §§ 404.1513a(a) (identifying "medical opinions" and "prior administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").  The prior administrative medical findings of Drs. Dalton and Kahn are thus evaluated in this context.

483.)  Plaintiff did, however, report she tried other medications in the past, but they did not work and it was a "trial and error" experience.  Plaintiff has a history of smoking marijuana "off and on" from 2010—2013, then daily after that.  (AR 484.)  Weight gain is a side effect of her current psychotropic medications, but Plaintiff reported she is getting used to the side effects and the medications make her feel better.  (Id.)  Plaintiff reported being diagnosed with ADHD and has been on medications for this most of her life; she never took any special education classes.  (AR 483.)  Plaintiff reported she used to do claim examinations for Workman's Compensation but she stopped in 2016 due to her fibromyalgia symptoms getting worse.  (Id.)

As to relationships, Plaintiff reported she has a "good" relationship with one of her four siblings, and is on her third marriage (marriage one lasted two years; marriage two lasted ten).  (Id.)  Plaintiff reported she keeps in contact with her two adult children via text (she reported "very good" relationships with them), though she denied keeping in contact with her friends or using social media.  (AR 483–85.)  Plaintiff reported that when she was working, she had "okay" relationship with her coworkers.  (AR 484.)

Plaintiff currently owns a home with her third husband.  (Id.)  She is financially supported by her husband and her military benefits; her husband manages their finances.  (Id.)  Plaintiff also reported she is capable of independently completing personal needs such as showering, cleaning herself, dressing, and ambulating; and that she does all the chores around her house herself (such as vacuuming, mopping, and doing laundry weekly, and washing dishes daily).  (AR 484–85.)  Plaintiff also reported she has hobbies of hiking and watching television.  (AR 485.)

On mental status exam, Plaintiff presented in good appearance with adequate hygiene, clean hair, and manicured nails.  (Id.)  She self-reported a "good" mood, presented apathetic, and she was observed to be stable throughout the evaluation, with a constricted affect.  (Id.)  She was cooperative and engaged, maintained moderate eye contact, and did not present with any visible tics or psychomotor agitation or retardation.  (Id.)  Plaintiff presented with linear, coherent, and goal-directed thought process; normal speech in terms of rate, volume, and rhythm that was spontaneous in nature with clear articulation; and denied delusions or suicidal ideations, and did not appear to be responding to any internal stimuli.  (Id.)  Plaintiff appeared oriented; correctly

answered all questions as to recent, remote, and immediate memory and concentration; and demonstrated good general knowledge fund.  (AR 485–86.)  She demonstrated she was capable of abstract thinking, could do basic calculations, and had intact judgement and insight.  (AR 486–87.)  Dr. Grewal assessed Plaintiff with average intellectual functioning.  (AR 486.)

Dr. Grewal diagnosed Plaintiff with PTSD and cannabis use disorder; he opined Plaintiff's prognosis is likely to improve in the next 12 months if she continues her current treatment.  (AR 487.)  Dr. Grewal opined Plaintiff is capable of managing her own funds; her ability to perform simple and repetitive tasks is unimpaired; and her ability to perform detailed and complex tasks is mildly impaired.  However, Dr. Grewal opined Plaintiff's ability to accept instructions from supervisors is moderately impaired. Further, Dr. Grewal opined Plaintiff's ability to interact with coworkers and the public; to perform work activities on a consistent basis without special or additional instruction; to maintain regular attendance and complete a normal workday workweek without interruptions from a psychiatric condition; and to deal with the usual stress encountered in the workplace are all markedly impaired "due to her current mental health functioning."  (AR 487–88.)

2.      Dr. Brandy Dalton, PsyD.

State agency medical consultant, Dr. Dalton, reviewed Plaintiff's medical records at the initial level of review and issued administrative findings on January 3, 2019.  (AR 94–100.) Among the medical evidence reviewed, Dr. Dalton noted Plaintiff's evidence of a recent history of anxiety, including PTSD traits (for which treatment was limited to recent group psychotherapy and medications), and cannabis dependence.  (AR 93–94.)  Dr. Dalton noted there was no history of decompensation/hospitalization, and psych reviews indicated "no more than mild to moderate cognitive limitation" and that Plaintiff's capacity for self-care and routine activities of daily living ("ADLs") was intact.  (AR 94.)  Dr. Dalton also noted her ultimate determination was based, in part, upon the finding that Plaintiff's allegations were inconsistent with her ADLs, statements made to different medical sources, and the opinion evidence.  (AR 95.)

Dr. Dalton opined Plaintiff had severe impairments due to a trauma and stressor-related disorder, an anxiety and obsessive-compulsive disorder ("OCD"), and a substance addiction

disorder (marijuana).  (AR 93–94.)  Dr. Dalton opined Plaintiff did not meet the physical listings.  (AR 93).  The mental impairments were evaluated under Listings 12.06 (anxiety and OCD) and 12.15 (trauma and stressor-related disorders).[9]  (AR 93).

Dr. Dalton opined Plaintiff did not meet the paragraph A criteria under the Listings because she lacked the required medical documentation.  (Id.)  As to the paragraph B criteria, Dr. Dalton opined Plaintiff has a mild limitation in the area of understanding, remembering, and applying information; and moderate limitations in the three remaining areas of interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself.  (Id.)  Dr. Dalton also determined Plaintiff does not meet the paragraph C criteria.  (Id.)  As a result, Dr. Dalton determined Plaintiff has the mental residual functional capacity to "complete simple instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence and pace as needed to complete a full work day"; and opined Plaintiff "would do best in a work setting that does not require general public contact.  She can work in proximity with coworkers but not on joint or shared tasks."  (AR 96, 97.)  Further, Dr. Dalton opined Plaintiff "would work best in structured environments, with predictable work tasks and with minimal social contacts with others that do not require a great deal of decision making or goal setting."  (AR 97.)

3.    Dr. S. Kahn, M.D.

---

[9] To establish an impairment meets or equals Listing 12.06 (anxiety and OCD), or Listing 12.15 (trauma and stressor-related disorders), the claimant must satisfy the criteria of either paragraphs A and B, or paragraph A and C.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  As to Listing 12.06 for anxiety disorder, "Paragraph A" requires medical documentation of at least three of the following: (a) restlessness; (b) easily fatigued; (c) difficulty concentrating; (d) irritability; (e) muscle tension; or (f) sleep disturbance.  Id.  As to Listing 12.06 for OCD, "Paragraph A" requires medical documentation of (a) involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; and/or (b) repetitive behaviors aimed at reducing anxiety.  Id.  As to Listing 12.15 (trauma and stressor-related disorders), "Paragraph A" requires medical documentation of all of the following: (1) exposure to actual or threatened death, serious injury, or violence; (2) subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks); (3) avoidance of external reminders of the event; (4) disturbance in mood and behavior; and (5) increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).  Id.  The "Paragraph B" criteria is the same for both Listings 12.06 and 12.15, and is defined supra, at n.7.  The "Paragraph C" criteria is the same for both Listings 12.06 and 12.15.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  It requires a "serious and persistent" mental disorder, which is established by a medically documented history of the existence of the disorder over a period of at least two years and both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal adjustment (i.e., the claimant has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life).  Id.

State agency medical consultant, Dr. Kahn, reviewed Plaintiff's medical records at the reconsideration level of review and issued administrative findings based on his review of the medical records through January 28, 2019.  (AR 107.)  Plaintiff provided additional medical records from Veterans Affairs for reconsideration; no new medical opinions were produced in those records.  (See AR 102–03, 402–53, 491–522.)  Plaintiff did not allege any new or worsening condition since the initial level decision.  (AR 102.)

In reconsidering the evidence and new medical records, Dr. Kahn concluded the initial recommended limitation of "limited contact" was not warranted because it was not consistent with evidence of Plaintiff's past work as a customer service representative for an insurance company, and Plaintiff had not alleged any changed or worsening condition; to the contrary, it was noted that Plaintiff's updated records suggested improvement.  (AR 106–07.)  Dr. Kahn determined Plaintiff's reports of a history of ADHD were not substantiated by the longitudinal record; instead, it was noted that Plaintiff has a high school diploma, took no special education classes, and Plaintiff originally reported that she stopped working in 2015 due to fibromyalgia symptoms, and not a mental disability.  (AR 106–09.)  Dr. Kahn also noted Plaintiff's allegations were inconsistent with her ADLs, conflicting statements she made to the medical sources, and her lack of seeking treatment for her alleged symptoms.  (AR 110.)  Dr. Kahn also reviewed Dr. Grewal's CE report, and discounted it as "without substantial support from the medical source who made it, which renders it less persuasive."  (AR 111.)

As a result, Dr. Kahn determined the impairments identified by Dr. Dalton were not severe; he additionally determined Plaintiff had a visual disturbance impairment, which was also non-severe.  (AR 107–08.)  Dr. Kahn opined Plaintiff has mild limitations in the areas of interacting with others, and maintaining concentration, persistence or pace; but no limitations in the other paragraph B criteria areas of functioning.  (AR 108.)  Because Dr. Kahn determined Plaintiff's impairments are all non-severe, Dr. Kahn concluded Plaintiff's psychiatric symptoms do not significantly decrease/impact her ability to function, and no residual functional capacity determination was made.  (AR 108–10, 112–13.)

**C.     The ALJ's Evaluation of the Medical Opinion Evidence and RFC**

**Formulation**

As to the prior administrative findings, the ALJ found Drs. Dalton and Kahn's findings to be "somewhat persuasive," in that "both the initial and reconsideration level, the narrative tracks the medical evidence and makes findings consistent with that cited evidence." (AR 27–28.)  As to Dr. Dalton, however, the ALJ found "[Plaintiff's] reported activities reflect she has greater functional abilities than just unskilled tasks.  She also has greater social abilities and can tolerate some interaction with the public, as well as with coworkers and others.  This is not as limited as [Dr Dalton] noted." (AR 28.)  The ALJ discounted Dr. Kahn's opinion, by contrast, because the medical records supported a finding that Plaintiff had severe impairments, and Dr. Kahn did not find any.  (See AR 18, 28.)  Thus, as reflected in the RFC, the ALJ determined Plaintiff was capable of understanding, remembering, and carrying out "more than simple but less than complex tasks that can be learned and mastered in up to six months' time." (AR 21.)  The ALJ based her evaluation of Drs. Dalton and Kahn's opinions on the records from Plaintiff's treating doctors, the consultative examination performed by Dr. Grewal, and the non-medical evidence, such as Plaintiff and her husband's statements and Plaintiff's ADLs.  (See AR 22–27, 29–32.)

The ALJ found Dr. Grewal's opinion to be "less persuasive," particularly with respect to the findings that Plaintiff was markedly impaired in her ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition.  (AR 28.)  The ALJ noted "[i]t is unclear on what basis" Dr. Grewal's marked impairment findings were made, as the ALJ found only mild and moderate impairment limitations were supported by the medical records.  (See AR 22–28.)  In addition, the ALJ noted an apparent inconsistency related to Plaintiff's alleged basis for her mental disability (i.e., the sexual assault trauma): the ALJ noted Plaintiff had a 2007 worker's compensation case in which she was placed off-work due to harassment; then she began treatment at the Veteran's Administration in 2017 (continuing through 2020) based on allegations of her military trauma occurring in 1983, but she did not mention the 2007 worker's compensation case to her providers at the VA; Plaintiff reported to Dr. Grewal that she was raped on the subway multiple times (in October 2018), but she did not report these assaults to her treating providers at the VA, even though this could constitute a valid reason

for having "issues with using the subway"; and specifically, Plaintiff admitted at the July 16, 2020 disability hearing that she did not report her 1980's military trauma during her 2007 worker's compensation claim, because she believed this information would not be helpful in her then-pending worker's compensation claim, and "they would have used it against her in the claim." (See AR 23, 25, 28, 30, 31.)

The ALJ also found Dr. Grewal's opinion was less persuasive because Plaintiff "[Plaintiff] had overall good findings on exam, which does not support the limitations related to a marked limitation interacting with coworkers or the public, or in performing activities on a consistent basis." (AR 28.)  The ALJ also found Dr. Grewal's determination that Plaintiff had issues being around others, or issues with attendance, was unsupported by the medical record, "outside of her reporting."  (Id.)  The ALJ explained Dr. Grewal's findings with respect to attendance and interacting with others "are not fully consistent with the remainder of the record, which reflects Plaintiff's ability to show for appointments, even though she has a long drive," and her ability to actively participate in group therapy.  (Id.)  As to Plaintiff electing to not participate in group therapy at the VA on certain occasions, the ALJ noted Plaintiff only declined these sessions because they were not well-attended by others.  (AR 28–29.)  The ALJ also noted Plaintiff called to cancel a pending appointment one time, reporting she was unable to make it due to traffic; the ALJ found this evidence showed Plaintiff's capacity in the areas of adaptation, understanding, remembering, and applying information, were less limited than Dr. Grewal opined, and not supportive of an issue with attendance.  (AR 29 (citing AR 594–1069).)  Finally, the ALJ found Dr. Grewal's findings that Plaintiff is capable of more than simple, routine or unskilled tasks was supported by the record.  (Id.)

Synthesizing the medical evidence and opinions, and Plaintiff's testimony and other non-medical evidence, the ALJ determined Plaintiff has mild and moderate limitations in the general functional areas of the paragraph B criteria.  (AR 19–21.)  The ALJ determined Plaintiff has a mild limitation in understanding, remembering or applying information because Plaintiff is able to manage her own appointments, create lessons and manage classrooms for young children at her church, where she is in charge of the children's ministry, and she planned a wedding abroad;

Plaintiff also sews, took a class on stained glass, and did stained glass as a hobby in 2020.  The ALJ concluded Plaintiff's ability to engage in such activities (which by their very nature, require an ability to learn and master certain techniques or methods) reflects no significant limitation. (AR 20.)

The ALJ similarly determined Plaintiff has a mild limitation in the area of adapting or managing oneself because Plaintiff demonstrated she is able to get to her own appointments, and change them when unexpected events—such as traffic—arise; she can manage her own medications; she is able to perform all her own personal care and light chores around the house; and Plaintiff's activities, like creating and teaching lessons at her church's children's ministry and planning her wedding in Italy, do not support the level of difficulty with stress and changes in routine Plaintiff reported.  (AR 20–21.)

Meanwhile, the ALJ determined Plaintiff has a moderate limitation in the ability to interact with others.  (AR 20.)  The ALJ considered Plaintiff's testimony that she experienced difficulty with the travel (even though she made no reports to her provider), her allegations of PTSD, and her complaints of difficulty being around groups of people; however, the ALJ also noted Plaintiff actively participated in a PTSD group through the VA, and only stopped participating due to a lack of participation by others; she has been able to plan and host a Thanksgiving dinner in 2019, attend concerts, spend time with friends, watch her husband's band practices, teach children, attend church, plan a wedding and travel to Italy for a couple weeks without any reported incidents; and the ALJ noted Plaintiff's testimony that pre-COVID, she went out to eat with her husband "quite often," and was upset they were no longer able to do that due to the pandemic.  This resulted in a finding of no more than moderate limitations in her ability to interact with others.  In reaching the RFC determination, the ALJ addressed this functional area, by limiting Plaintiff to "routine interaction with supervisors, coworkers, and occasional contact with the general public … [and] no tandem job tasks, requiring cooperation with other workers to complete the task."  (AR 21.)

The ALJ also determined Plaintiff has a moderate limitation with regard to concentrating or maintaining pace.  Again, the ALJ considered Plaintiff's complaints of cognitive difficulties.

However, the ALJ also noted Plaintiff's mental status exams (AR 20 (citing AR 594–1069)) consistently demonstrated intact attention and concentration; neuropsychological testing did not demonstrate any overt difficulties with memory, and Plaintiff's thought process was linear and coherent; with respect to attention, Plaintiff's performance on standardized tests generally fell in the average to high range, with only one test falling in the lower-average range; and Plaintiff exhibited intact attention comparable to her age-matched peers (id. (citing AR 685)).  The ALJ noted that, in processing and motor speed, Plaintiff's scores ranged from borderline-impaired to average, but also noted this area was considered to be an area of "variability."  On examination, Plaintiff demonstrated intact receptive and expressive language ability; her verbal memory scores were in the average range; and her visuospatial functioning results appeared variable (id. (citing AR 686)).  The ALJ also considered Plaintiff's allegation of some cognitive difficulties, but noted she attributed those difficulties to the side effects of her medication.  And the ALJ considered Plaintiff's allegations regarding difficulty traveling to work on time, but noted these difficulties only started after Plaintiff had to follow a complex subway schedule to get to work on time.  In light of some of Plaintiff's results appearing "variable," the ALJ thus concluded Plaintiff's limitation in this area is moderate.  Accordingly, she included the limitation in Plaintiff's RFC for "more than simple but less tan complex tasks that can be learned and mastered in up to six months' time."  (AR 21.)

As previously noted, the ALJ's determination that Plaintiff has mild and moderate degrees of limitation in the paragraph B functional areas is reflected in the RFC determination being inclusive of non-exertional limitations, such as "more than simple but less than complex" tasks, occasional contact with the general public, and no tandem job tasks.  (Id.)

**D.     Analysis**

Plaintiff has not challenged the ALJ's step two finding of only non-physical severe impairments, and does not discuss any of her physical impairments originally alleged.  Accordingly, the Court finds argument as to these issues is waived.[10]  Importantly, Plaintiff has

---

[10] Lewis, 236 F.3d at 517 n.13 (the court reviews only those issues raised by the party challenging the decision); Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically

also not challenged the ALJ's adverse credibility determination regarding her testimony, or the ALJ's evaluation of the other non-medical evidence, even though it is plain that these findings were extremely relevant to the ALJ's ultimate RFC determination.  Instead, Plaintiff challenges the ALJ's evaluation of the medical opinions of Drs. Dalton, Kahn, and Grewal, arguing that the ALJ failed to adequately explain her findings via the supportability and consistency factors.  And, although she does not expressly challenge the ALJ's step three finding that she has only mild and moderate functional limitations under the Paragraph B criteria, Plaintiff suggests these findings would be different if the ALJ had fully credited Dr. Grewal's opinion of certain cognitive limitations, and could result in a finding of disability.  (See ECF No. 17 at 17.)

However, the Court finds the ALJ adequately explained how she considered the supportability and consistency factors relative to the prior administrative findings of Drs. Dalton and Kahn and the medical opinion of Dr. Grewal,[11] and her analysis is supported by substantial evidence in the record.  Ford, 950 F.3d at 1154; Martinez V., 2021 WL 1947238, at *3.  Further, Plaintiff's concessions on the aforementioned related issues are also relevant to the Court in determining whether the ALJ's evaluation of the medical and opinion evidence is supported by substantial evidence in the record, as discussed herein.

---

and distinctly in a party's opening brief.").

[11] The Court notes here that Plaintiff appears to include argument that the ALJ's statement that she considered the "medical opinions of both of Plaintiff's treating doctors" and the CE is erroneous because Plaintiff's treating sources did not submit any opinions for the ALJ to have considered.  (ECF No. 17 at 14.)  The Court finds this argument unpersuasive.  A reading of the decision reveals that the ALJ's reference to "both of Plaintiff's treating doctors" was meant to refer to Drs. Dalton and Kahn, the only other doctors apart from Dr. Grewal (the CE), whose findings the ALJ expressly weighed.  Furthermore, the Regulations provide that, while state agency medical and psychological consultants do not provide "medical opinions," the ALJ must consider prior administrative medical findings under the same rules that apply to "medical opinions."  20 C.F.R. § 404.1513a(b)(1); see also 20 C.F.R. § 404.1513(a).  In addition, the Court notes the Ninth Circuit has often declined to disturb an ALJ's otherwise reasonable decision based on semantical and other superficial arguments.  See, e.g., Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), superseded by regulation on other grounds ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," provided "those inferences are there to be drawn"); see also Rice v. Barnhart, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." (internal citation omitted)).  Apart from arguing the ALJ's possible misstatement was "confusing," Plaintiff presents no substantive argument that this sentence in the ALJ's opinion is a true basis to find legal, reversible error necessitating remand of this action for further administrative proceedings.

1.      Supportability

As the Court noted, the ALJ found both Drs. Dalton and Kahn's findings to be "somewhat persuasive," as they were both somewhat supported by and consistent with the record.[12]   But Dr. Dalton interpreted the records to show limitations greater than what Plaintiff has; whereas Dr. Kahn interpreted the records to show Plaintiff had no limitations at all.   Determining that both doctors, relying on the same record, were "somewhat persuasive," does not reflect an inconsistency in the ALJ's reasoning, as Plaintiff contends (ECF No. 17 at 13), but rather reflects the difference of opinion reached by Drs. Dalton and Kahn.   The ALJ resolved the differences of opinion, as she was required to do under the Regulations, determined Plaintiff's limitations were less severe than opined by Dr. Dalton, but more severe than opined by Dr. Kahn, and required a limitation to "more than simple but less than complex tasks that can be learned and mastered in up to six months' time."   (AR 21); see also Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."); Batson, 359 F.3d at 1195; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti v. Astrue, 533 F.3d 1035, 1041–42 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

The supportability factor is established by the ALJ's review and discussion of the longitudinal medical records.   The ALJ noted Plaintiff's June 18, 2015 panel qualified medical evaluator ("QME") yielded mental status examination findings of a depressed, anxious, and

---

[12] Though not explicitly spelled out in the short paragraph finding Drs. Dalton and Kahn's opinions to be only "somewhat persuasive" (AR 28), the Court understands that the ALJ weighed their opinions against the medical evidence and non-medical evidence, as demonstrated by the extensive analysis provided in the pages prior.   Molina, 674 F.3d at 1121; Magallanes, 881 F.2d at 755; Rice, 384 F.3d at 370 n.5.   Thus, Plaintiff's argument that the ALJ did not indicate how persuasive she found Dr. Kahn's opinion to be, or discuss the supportability and consistency factors with respect to Drs. Dalton and Kahn's opinions (ECF No. 17 at 13–14) is unavailing.

dysphoric mood with an appropriate and anxious affect, and a distractible attention span.  (See AR 22 (citing AR 1072–1135); see also id. (citing AR 1096, 1115–16).)  The ALJ also considered Plaintiff's reports of a sad and anxious mood, and symptoms of PTSD during follow up appointments on September 25, 2017 (AR 22–23 (citing AR 1046)), October 23, 2017 (AR 23 (citing AR 428)), and March 10, 2020 (AR 25 (citing AR 752) (showing dysphoric mood in session)).  These records support Drs. Dalton and Grewal's findings that Plaintiff had severe mental impairments, and did not support Dr. Kahn's finding that Plaintiff had no severe impairments.

However, the ALJ also noted Plaintiff's June 18, 2015 panel QME yielded mental status examination findings of goal directed thinking, intact judgment and impulse control, a cooperative attitude, appropriate thought content and ability to make routine decisions; and that Plaintiff was assessed with a mild to moderate impairment in her memory, and neurocognitive testing showed only a mild limitation.  (AR 22 (citing AR 1072–1135); see also id. (citing AR 1096, 1115–16).)  The ALJ also noted Plaintiff's multiple follow up appointments which yielded normal findings, such as notes that Plaintiff was cooperative with good eye contact, had normal speech, normal and coherent thought processes, good attention and concentration and good insight and judgment, and euthymic mood.  (See AR 22–23 (citing AR 1046 (September 25, 2017)); AR 23 (citing AR 671 (October 23, 2017, noted to be an "excellent mental status exam" and "completely benign")); id. (citing AR 417 (September 27, 2018, mindful exercise in group therapy, active participation in discussion and eurythmic mood)); id. (citing AR 413, 418 (October 25, 2018, Plaintiff reported feeling well overall, with both her and her husband reporting "no major psychiatric problems" and Plaintiff reported feeling more stabilized on her medications)); AR 24 (citing AR 497 (December 13, 2018, reported feeling stable and symptoms were "well controlled," and Dr. Koek noted Plaintiff's mental status exam was "essential[ly] within normal limits except [she expressed anxiety] when discussing traumatic remainders.")); id. (citing AR 852–53 (May 14, 2019)); id. (citing AR 669, 672 (July 22, 2019)); AR 25 (citing AR 766 (January 21, 2020, euthymic mood, cooperative and reasonable attitude, normal thought processes, good attention, concentration, and intact insight and judgment)); id. (citing AR 752

(March 10, 2020, demonstrated normal thought processes, attention and concentration, insight and judgment, etc.)).  The Court notes that, contrary to Plaintiff's argument (see ECF No. 17 at 16), the ALJ's discussion of these records supports her conclusion that Plaintiff's mental examination findings were generally "good."

The ALJ also considered Plaintiff's October 7, 2019 neuropsychological evaluation (which was continued and completed on October 28 and November 20, 2019), which yielded an FSIQ (full-scale intelligence quotient) of 83 (low-average range); borderline-impaired processing speed and perceptual reasoning scores; and average-range scores in areas of verbal comprehension and working memory.  (AR 24–25 (citing AR 678–79, 683–86, 692, 787).)  The ALJ noted Plaintiff's standardized testing scores were generally in the average-to-high range, with only one test falling in the low-average range, but this was demonstrative that Plaintiff had intact attention that was comparable to age-matched peers.  The ALJ also noted the variability in other test results, and noted Plaintiff often showed intact functional capacities, performed within normal limits, and only became tearful when discussing her cognitive and functional impairments.  Furthermore, the ALJ noted Plaintiff has not sought and received appropriate medical treatment for her allegedly disabling symptoms for large portions of the period at issue. (AR 32.)

Thus, the ALJ determined the medical records did not fully support Dr. Dalton's opinion that Plaintiff's functional abilities limit her to just unskilled tasks and prevent her from some interaction with others.  (AR 28.)  Similarly, the ALJ determined the medical records did not support Dr. Grewal's opinion that Plaintiff had marked limitations in her ability to interact with coworkers or the public, or in her ability to perform activities on a consistent basis.  (Id.)  Further, the ALJ found Dr. Grewal's opinion was not supported by his own examination results, including the fact that Dr. Grewal noted Plaintiff's reporting of her history and symptoms was inconsistent with the record.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.").  Further, the ALJ found Dr. Grewal's opinion less persuasive as to Plaintiff's social abilities because the opinion lacked

support in the record, "outside of [Plaintiff's] reporting."  (AR 28); see Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion") (internal citation omitted).

The medical records identified by the ALJ in support of her findings constitute substantial evidence.  Tommasetti, 533 F.3d at 1041; Ford, 950 F.3d at 1155; Andrews, 53 F.3d at 1041; Batson, 359 F.3d at 1195.  The findings that Plaintiff was assessed with mild limitations and sometimes displayed or reported depressed mood, and the mixed standardized testing results support the ALJ's determination that Dr. Kahn's opinion of no limitations was not supported by the record.  See Andrews, 53 F.3d at 1041; see also Batson, 359 F.3d at 1195 (inconsistency with the majority of objective medical evidence is an appropriate reason for rejecting a physician's opinion).  Meanwhile, the multiple examinations yielding normal results, the QME panel assessing only mild to moderate limitations, and average-range testing results constitutes substantial evidence in support of the ALJ's finding that Plaintiff was not as limited as Drs. Dalton or Grewal found.  Id.  On this same basis, the ALJ adequately explains her determination that Dr. Grewal's opinion that Plaintiff had markedly limiting impairments was unsupported by the record.

Thus, the Court finds the ALJ's analysis of the supportability factor relative to Drs. Dalton and Kahn's prior administrative findings and Dr. Grewal's opinion was appropriately considered and is based on substantial evidence from the record, and Plaintiff's assertion that no assessment of the evidence was articulated by the ALJ (ECF No. 17 at 14) is unavailing.  See Woods, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Ford, 950 F.3d at 1155; Tommasetti, 533 F.3d at 1041; Batson, 359 F.3d at 1195; Bray, 554 F.3d at 1228.

2.    Consistency

As to the consistency factor, in addition to the aforementioned medical records, the ALJ considered Plaintiff's significant ADLs, her hearing testimony, and Plaintiff and her husband's reports to her medical providers.  For example, the ALJ found Plaintiff's ADLs demonstrated that Drs. Dalton and Grewal too greatly restricted Plaintiff's interactions with others, where Dr.

Dalton recommended restricting Plaintiff to minimal social contacts with others, and Dr. Grewal found Plaintiff's ability to interact with coworkers and the public is markedly impaired.  See Sandoval v. Berryhill, CIV 17-0641 JHR, 2018 WL 3429920 (D.N.M. Jul. 16, 2018), at *7 (noting a "marked" impairment prevents any interaction).  Plaintiff argues the ALJ did not cite to any specific activity or attempt to explain how that activity demonstrated greater functional and social abilities.  (See ECF No. 17 at 12.)  The Court disagrees.  In fact, Plaintiff's ADLs, which support the ALJ's finding that the limitations opined by Drs. Dalton and Grewal were inconsistent with the record are discussed quite extensively:

> It is important to note that, the record reflects that, the claimant is engaged in daily activities and social interactions that are not limited to the extent one would expect if her mental impairments were as severe as alleged from the alleged onset date.  The claimant currently lives independently with her husband, marrying him on March 27, 2016, in Italy (Exh. 2D; testimony).  Prior to that, she lived independently alone.  Her ability to plan and travel abroad to Italy, as well as travel in Italy [for two weeks], when marrying her husband reflects greater social interaction abilities than alleged.  [The ALJ also noted Plaintiff's ability to deal with crowds at the airport, go through security, fly on a crowded plane for a 14-hour plane trip (each way), and spend two weeks in a foreign location without issues were all inconsistent with her allegations.]  She has reported that upon marrying her husband, he "retired" her, "with her blessing" (Exh. 1F/28).  She hikes, and watches her husband practice or play in a band (Exh. 4F/3).  She sews, did stained glass, including taking a class [the ALJ also noted Plaintiff attempted to minimize this fact at the hearing by stating she did not have anything in common with her classmates, but the ALJ discounted this statement because Plaintiff reported no such complaints to any of her medical providers, but instead repeatedly reported enjoying the class, noting she was doing stained glass as a hobby in February 2020], and volunteered, creating lessons and managing classrooms for young children at her church, where she is in charge of the children's ministry (Exh. 4F; 5E; 5F).  She also has been able to attend concerts, and generally spend time with friends (Exh. 4F).  While she alleged difficulty being around groups of people, she participated actively in a PTSD group through the VA, only stopping due to lack of participation by others (Ex. 1F/16, 17, 19).  She planned a Thanksgiving dinner in her home in 2019, and was upset when her brother cancelled since he did not agree with her son's sexual orientation (Ex. 5F/203).  She apparently went out to eat quite often with her husband prior to the COVID pandemic [Plaintiff reported going into town at least once a day], and was upset that they were no longer able to do that, given the pandemic (Ex. 5F/1S4).  The fact that the claimant has been able to engage in such a wide variety of activities, to interact appropriately with friends and family, and to go so often out of her home, indicates that she has been capable of sustaining some level of work-related

> activities since her alleged onset date, with such activities reflecting adequate social and adaptation abilities …

(AR 25–26; see also AR 20, 30.)  The ALJ also noted Plaintiff was able to relocate to a new town after getting married, join and be active in a new church, and have a maid come in regularly to clean.  (AR 31.)  Based on these activities, the ALJ concluded Plaintiff has no more than moderate limitations in this area.  (AR 20.)  Accordingly, Drs. Dalton and Grewal's opinions that Plaintiff required more severe restrictions were deemed inconsistent with the record.  Thus, the ALJ adequately discussed the consistency factor with respect to the medical opinion evidence, and identified substantial evidence in support of her findings.  See Tommasetti, 533 F.3d at 1041 (incongruity between a treating physician's opinion and the medical records constitutes substantial evidence to support an ALJ's reason for rejecting the physician's opinion of the patient's limitations); Bray, 554 F.3d at 1228.

In another example, the ALJ found Dr. Grewal's opinion that Plaintiff is markedly limited in her ability to maintain regular attendance and performing activities on a consistent basis is inconsistent with the record.  (AR 28.)  The ALJ noted Plaintiff

> has been able to get herself to appointments, change appointments when unexpected events arise, such as traffic, and manage her own medication (Exh. 4F).  The claimant has also been able to perform all her own personal care and light chores around the house.  While she has reported difficulty with stress and changes in routine, the activities of daily living do not support that level (Exh. 5E).  She is able to manage her own appointments, create lessons and manage classrooms for young children at her church, where she is in charge of the children's ministry, and plan a wedding abroad (Exh. 4F; 5E; 8F).

(AR 20.)  In particular, the ALJ noted that Plaintiff's activities of sewing, stained glass, and managing and instructing her church's children's ministry are all activities which require good focus, attention, and concentration skills:

> At the hearing, the claimant testified that since the pandemic, she is in charge of children's crafts, which she does the last two weeks of every month.  She plans it and has to procure the items, getting them on Amazon.  The kids are aged 3–9, and there are six in total.  Her ability to do this planning and execution reflects no issues in understanding, remembering, and applying information, or in adaptation.  It also shows no significant issues in focus, attention, and concentration, and the fact that [Plaintiff is] keeping the kids

engaged in these activities further shows no significant deficits.

(AR 26–27.)  In addition, the ALJ noted that, while Plaintiff reported some cognitive difficulties, she attributed them to the side effects of her medication (AR 20), and she later reported in December 2019 that after stopping the medication, her memory and concentration had improved (AR 31); it was also recommended Plaintiff discontinue her use of cannabis, because it had an effect on her cognitive symptoms (AR 25 (citing AR 691)); Plaintiff's neuropsychological testing results showed she did not demonstrate any overt difficulties with memory, and her thought process was linear and coherent (AR 20); and while Plaintiff has longstanding mental allegations such as PTSD due to her military sexual trauma in the 1980s, she was able to work for 30 years without any noted issues (AR 22).  The ALJ's references to the record constitute substantial evidence that support her evaluation under the consistency factor with respect to Dr. Grewal's opinion.

Plaintiff takes issue with the ALJ's discounting of Dr. Grewal's opinion that Plaintiff is markedly impaired in her ability to maintain regular attendance.  Plaintiff argues the ALJ's opinion is not supported by substantial evidence.  The Court again disagrees, for the aforementioned reasons.  In addition, the Court notes the ALJ acknowledged Plaintiff's allegation that she experienced difficulty using public transportation after being sexually assaulted on the subway, and that she reported to Dr. Grewal that she had been sexually assaulted on two separate occasions while using the subway, and this was why she could not use the subway.  (AR 22, 27.) However, the ALJ rejected Plaintiff's allegation, on the basis that the allegations appear nowhere else in the record, commenting "she never reported this to her treating providers at the Veterans' Administration and never reported [it] to her work, [even though it] could be a valid reason why she had issues with using the subway."  (AR 31.)  The ALJ noted Dr. Grewal also commented on the inconsistency with the records, even though he ultimately found Plaintiff had a marked limitation.  In addition, the ALJ noted the inconsistency of Plaintiff's allegation with her prior reports of going to work:

> She claimed they had changed the location of the job from one location to another, and she had a three hour round trip commute. She was taking the train from Simi Valley where she lived, and then

the subway, and had difficulty remembering the route. She was arriving late … she had no issue prior to the move, and it appears the longer commute was really the issue. While that is certainly understandable, because the Los Angeles region has a high population density with large traffic issues, … [concluding Plaintiff's allegation of being afraid of public transportation due to be assaulted on the subway was generally not compatible or reasonably consistent with the medical evidence of record and all other evidence].

(AR 27, 30–31.) The ALJ relied on these inconsistencies between Plaintiff's allegations and the record (among others)[13] to reach an adverse credibility determination and discount Plaintiff's subjective testimony. The ALJ found Dr. Grewal's determination that Plaintiff had issues with attendance was unsupported by the medical record, "outside of her reporting." (AR 28.) Notably, Plaintiff has not challenged the ALJ's evaluation and discounting of her testimony.[14] Having properly rejected Plaintiff's allegations, the ALJ's discounting of Dr. Grewal's opinion to the extent it heavily relied on Plaintiff's self-reporting rather than objective findings, was appropriate. Bray, 554 F.3d at 1228 ("As the district court noted, however, the treating physician's prescribed work restrictions were based on [the claimant's] subjective characterization of her symptoms. As the ALJ determined that [the claimant's] description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements."). The ALJ's explanation for rejecting Dr. Grewal's opinion based solely on Plaintiff's reporting further demonstrates the ALJ's analysis of the supportability and consistency factors relative to Dr. Grewal's opinion, and is based on substantial evidence from the record. Woods, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3.

---

[13] The ALJ also commented on the inconsistencies with Plaintiff's reporting of sexual trauma as it related to her cognitive abilities. Namely, Plaintiff alleges military sexual trauma from 1983, but when she sought and obtained worker's compensation benefits based on alleged harassment from her job in 2007, she did not report the 1983 military trauma. Later, she learned from a friend that she could obtain benefits from the military, so she reported the 1983 trauma to the VA, alleging the 1983 trauma caused her PTSD, but omitted reports of her worker's compensation claim. At the disability hearing, Plaintiff testified that she did not report the military sexual trauma to her employer as part of her worker's compensation claim because she believed they would have used the information against her. The ALJ noted Plaintiff's intentional withholding of information from her worker's compensation reviewers, in order to obtain benefits, "reflects [Plaintiff] has the capacity to understand the ramification of [the information] against her claim," and demonstrates Plaintiff "has the ability to understand, remember, and apply information without issue, realizing that this information would not be helpful in her then pending worker's compensation claim." (AR 27, 30.)

[14] She has therefore waived argument as to that issue. Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

27

1          3.     Plaintiff's Remaining Arguments

2          Having determined the ALJ appropriately evaluated the medical opinion evidence,

3    addressing the supportability and consistency factors, and supporting her findings with substantial

4    evidence from the record, the Court briefly addresses Plaintiff's remaining arguments.

5          Plaintiff appears to argue that, because the ALJ reached an RFC determination that differs

6    from the limitations set forth by both Dr. Dalton and Dr. Grewal, the ALJ substituted her own lay

7    opinion for the judgment of a medical professional.  (ECF No. 17 at 13.)  Such an argument is

8    unavailing.  Plaintiff does not identify any raw data evidence in the medical record that she

9    contends the ALJ improperly interpreted without assistance of a medical opinion in reaching the

10   RFC determination.  Further, the RFC is not a medical opinion, but a legal decision that is

11   expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c);

12   Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's

13   physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  Thus, as

14   previously noted, it is squarely within the ALJ's province to synthesize the medical evidence,

15   resolve conflicts and ambiguities in the medical testimony, and determine

16   credibility.[15]  See Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; see also Lingenfelter, 504

17   F.3d at 1042; Morgan, 169 F.3d at 603; Tommasetti, 533 F.3d at 1041–42; Benton, 331 F.3d at

18   1040.  It therefore follows that "[t]he ALJ's RFC determination need not precisely reflect any

19   particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-

20   00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019); Turner, 613 F.3d at 1222–23;

21   Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact

22   descriptions of … limitations" to reach an RFC determination consistent with the medical record

23   and claimant's limitations).  Plaintiff's argument to the contrary is, therefore, unavailing.

24         Plaintiff also cites to certain medical notes she contends are supportive of Dr. Grewal's

---

[15] Indeed, not only does the RFC determination fall exclusively under the ALJ's province; the Regulations and controlling legal authorities *require* an ALJ to evaluate the objective medical evidence in the record.  See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim, we make findings about what the evidence shows.").  This necessarily includes consideration of "medical signs" (which are "shown by medically acceptable diagnostic techniques") and "laboratory findings" (including MRIs and x-rays).  See 20 C.F.R. §§ 404.1513(a)(1), 404.1502(c) (defining laboratory findings), 404.1502(g) (defining medical signs).

opinion, and argues the ALJ erred because she failed to discuss these notes in her evaluation of Dr. Grewal's opinion. (ECF No. 17 at 16–17.) However, this argument is also flawed. Notably, the Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p) ("[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Nonetheless, here, it appears the ALJ considered the longitudinal records, resolved the inconsistencies and ambiguities as she was required to do, Andrews, 53 F.3d at 1039, and reached a conclusion about Plaintiff's functional limitations that the Court finds was reasonable. Specifically, the ALJ considered Plaintiff's symptomology as reported to her various providers, the findings in certain mental health examinations of depressed and other "abnormal" moods, as well as the cognitive testing and its results—that is, the ALJ considered and discussed the medical issues Plaintiff identifies in her briefing. While Plaintiff generally disagrees with the ALJ's findings, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022); see also Molina, 674 F.3d at 1111 ("we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record").

In sum, the Court finds the ALJ reasonably interpreted the objective medical evidence and substantial evidence supports the ALJ's relevant findings. As previously noted, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either affirming or reversing the Commissioner's conclusions, the court cannot substitute its own judgment for that of the Commissioner). "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017). Accordingly, the Court concludes the ALJ's analysis of the supportability and consistency factors relative to Drs. Dalton

and Kahn's prior administrative findings, and Dr. Grewal's medical opinion was appropriately considered and is based on substantial evidence from the record.  See <u>Woods</u>, 32 F.4th at 792; <u>Ford</u>, 950 F.3d at 1155; <u>Bray,</u> 554 F.3d at 1228.

**VI.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (ECF No. 17) is DENIED;

2.  Defendant's cross-motion for summary judgment (ECF No. 18) is GRANTED; and

3.  The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Elisabeth Marie Pirro, and close this case.

IT IS SO ORDERED.

Dated:   **April 26, 2023**

_____
UNITED STATES MAGISTRATE JUDGE